**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

RICKY HARRIS,                                                                    PLAINTIFF
ADC #076226

v.                                          5:19CV00310-BSM-JTK

CORRECT CARE SOLUTIONS, et al.                                   DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or

other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

### I.    Introduction

Plaintiff Ricky Harris ("Plaintiff") is incarcerated at the Varner Unit of the Arkansas Division of Correction ("ADC").   Plaintiff sued Correct Care Solutions,[1] WellPath, LLC, and Nurses Estella Bland and Matthew Wood (collectively "Defendants").[2]   (Doc. Nos. 2, 5). Plaintiff alleged deliberate indifference to his serious medical needs.   (Doc. Nos. 2, 5).

Defendants now have filed a Motion for Summary Judgment, Brief in Support, and Statement of Facts on the merits of Plaintiff's claims. (Doc. Nos. 43-45).   Plaintiff has responded. (Doc. Nos. 51, 52).   After careful consideration, and for the reasons set out below, the Court recommends Defendants' Motion be granted

---

[1] All claims against Defendant Correct Care Solutions have been merged with claims against WellPath, LLC, and WellPath, LLC was substituted as the proper Defendant for claims made against the two companies.   (Doc. No. 12).

[2] The Clerk of the Court is directed to correct Defendants' names on the docket to Estella Bland and Matthew Wood.   (Doc. No. 8 at 1).

## II.    Plaintiff's Complaint

Plaintiff sued Defendants in their personal and official capacities.  (Doc. No. 5 at 1-2). Plaintiff alleged he was "living in constant pain," but Defendant WellPath refused to respond to Plaintiff's complaints.  (Id. at 5-6).  Plaintiff further alleged he suffered from a serious and painful back condition.  (Id. at 6).  According to Plaintiff, he saw a Dr. Crowell, an outside orthopedic surgeon, who was going to schedule Plaintiff for surgery soon if he reviewed Plaintiff's MRI results promptly.  (Id.).  Defendant Wood or Bland, however, deemed Plaintiff's return appointment non-emergent.  (Id. at 6-7).  Plaintiff ultimately had surgery on May 18, 2018, and was seen by Defendant Bland on June 20, 2018.  (Id. at 7).  At that appointment, Plaintiff complained of leg pain, and that his blood pressure was high.  (Doc. No. 5 at 7).  Plaintiff maintains Defendant Bland did nothing about his complaints.  (Id.).

Plaintiff's "medical consult [with Dr. Crowell] was submitted and approved on July 27, 2018," but had been rescheduled multiple times.  (Id.).  Plaintiff grieved this matter on October 22, 2018.  (Id. at 7-8).

According to Plaintiff, Dr. Crowell recommended Plaintiff take Hydrocodone and Flexeril or Zanaflex after Plaintiff's back surgery, and recommended a follow up visit two weeks post surgery.  (Id. at 8-9).  Defendant Wood saw Plaintiff upon his return to the Varner Unit, and prescribed different medication than what Dr. Crowell had recommended. (Id. at 8).    Plaintiff takes issue with Defendant Wood "overrid[ing] the recommendations of an orthopedic surgeon." (Doc. No. 5 at 9).    Plaintiff was taken to St. Vincent Hospital after he fell at the Varner Unit, he was then later released back to Varner.  (Id.).  Plaintiff says his medical conditions are getting progressively worse because of improper treatment.  (Id. at 9-10).  He seeks damages, among other relief.  (Id. at 11-12).

### III.    Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ."  Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas.  Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

IV.    **Facts and Analysis**

Plaintiff alleged deliberate indifference to his serious medical needs.

A.    **Official Capacity Claims**

Plaintiff sued Defendants in their official and personal capacities. Plaintiff's official capacity damages claims against Defendants are the equivalent of claims against their employer, WellPath. See Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975-76 (1993). To succeed on a claim against the WellPath, Plaintiff would have had to establish that a WellPath policy or custom was the driving force behind the violation of Plaintiff's rights. See Id.

The Court acknowledges Plaintiff's affidavit attempts to establish a policy or practice. (Doc. No. 52). But Plaintiff's attempt falls short. Because Plaintiff has not come forward with evidence that a WellPath policy or custom resulted in violation of his rights, summary judgment in Defendants' favor on Plaintiff's official capacity claims is appropriate.

B.    **Personal Capacity Claims—Deliberate Indifference to Serious Medical Needs**

The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. AMEND. VIII. This prohibition gives rise to the government's duty to provide medical care to prisoners. "The government has an 'obligation to provide medical care for those whom it is punishing by incarceration." Allard v. Baldwin, 779 F.3d 768, 772 (8th Cir. 2015) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)). It follows that the "Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners." Robinson v. Hager, 292 F.3d 560, 563 (8th Cir. 2002) (internal citation omitted). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Schuab v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011) (internal citation omitted). "Deliberate indifference may be

5

demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). To succeed on a claim of deliberate indifference to a medical need, a plaintiff must show he had an objectively serious medical need and prison officials had actual knowledge of, but deliberately disregarded, that need. See Washington v. Denney, 900 F.3d 549, 559 (8th Cir. 2018); McRaven v. Sanders, 577 F.3d 974, 981 (8th 2009).

Plaintiff's Amended Complaint largely focuses on his back problems; Plaintiff testified that this lawsuit is "mainly a back case." (Doc. No. 44 at ¶ 6). Plaintiff testified that he had fusion surgery on his back in 2016 or 2017. (Id.). Plaintiff then had an MRI of his back on March 24, 2017. (Doc. No. 44 at ¶ 5; Doc. No. 44-1 at 1.) The MRI noted the earlier lumbar surgery. (Doc. No. 44 at ¶ 5; Doc. No. 44-1 at 2).

Plaintiff was transferred from the Ouachita River Unit to the Varner Unit on June 9, 2017. (Doc. No. 44 at ¶ 7). Dr. Crowell, an outside provider, evaluated Plaintiff on July 5, 2017 in connection with Plaintiff's back. (Doc. No. 44 at ¶ 8; Doc. No. 44-1 at 6).

In October 2017, Plaintiff was admitted to the Jefferson Regional Medical Center and found to have a gastrointestinal bleed and a large peptic ulcer; Plaintiff returned to Varner after a week of hospitalization. (Doc. No. 44 at ¶ 9; Doc. No. 44-1 at 78-79). Defendant Bland saw Plaintiff for a follow up visit on October 24, 2017. (Doc. No. 44-1 at 79). She prescribed medication and ordered lab work. (Id.) She also noted follow up as needed. (Id.)

Plaintiff's claims in this lawsuit begin on or around November 8, 2017. (Doc. No. 44 at ¶ 11; Doc. No. 51 at ¶ 1). On November 8, 2017, Dr. Crowell saw Plaintiff again and requested to

review Plaintiff's latest MRI and after the review, "consider surgery."   (Doc. No. 44 at ¶ 10; Doc. No. 44-1 at 7 ).

Defendant Bland reviewed Dr. Crowell's November 8, 2017 report.   (Doc. No. 44-1 at 84).   She noted: "1. See mediation order; 2. See consultation request; 3. Follow-up as needed." (Id.)   According to Defendant Bland's encounter notes, Plaintiff was scheduled to see Dr. Crowell again on February 14, 2018 at 8:00 a.m.   (Id.)

Defendant Bland saw Plaintiff next for a chronic care visit on August 1, 2017.   (Id. at 87). The chronic conditions noted were HTN [hypertension], HLD, DM, and Thyroid Disorder.   (Id.) Defendant Bland prescribed multiple medications at this visit.   (Id.)

Defendant Wood examined Plaintiff during a sick call on January 3, 2018.   (Doc. No. 44-2 at 1).   Plaintiff "continues to complain of pain throughout his back.   [Plaintiff] inquiring about F/U with ortho to discuss surgical removal of bone spurs in L Spine.   He also is requesting renewal of his soon to expire scripts."   (Id.)   Plaintiff's medications were reviewed along with Dr. Crowell's 11/8/2017 consult notes, and Defendant Wood noted that Plaintiff was "[s]cheduled for F/U [with Dr. Crowell] on 2/14/2018 for MRI review and consideration for possible lumbar laminectomy."   (Id.)   Defendant Wood renewed Plaintiff's scripts and noted to continue Plaintiff's medical regime.   (Id.)

Defendant Wood saw Plaintiff again on February 2, 2018 in connection with a rash and Plaintiff's soon to expire prescriptions for pain medication.   (Id. at 4).   Defendant Wood's notes reflect "Meds ordered."   (Id.)

Plaintiff was seen by Dr. Crowell on February 14, 2018—just as Defendants Bland's and Wood's notes had indicated Plaintiff would.   (Doc. No. 44 at ¶ 14; Doc. No. 44-1 at 11).   Dr. Crowell prescribed Zanaflex, Tramadol, and Gabapentin.   (Doc. No. 44-1 at 11).   Defendant

Bland reviewed Dr. Crowell's February 14, 2018 report and noted follow-up as needed and an appointment with Dr. Crowell scheduled for May 18, 2018 at 5:15 a.m.  (Doc. No. 44-2 at 6).

Defendant Bland reviewed February 12, 2018 consult notes from cardiologist Dr. Sadeem Mahmood, another outside provider.  (Id. at 7).  Dr. Mahmood recommended 40mg of Lisinopril, which Defendant Bland prescribed.  (Id.)  Dr. Mahmood also recommended 20mg of Lasix; Defendant Bland prescribed that same dosage of the generic medication.  (Id.)  Defendant Bland also noted follow up as needed with three additional provider appointments scheduled.  (Id.)

Defendant Wood saw Plaintiff for medication refills on February 28, 2018.  (Id. at 9).  Plaintiff sought the renewal of his prescriptions for Zanaflex, gabapentin, and tramadol.  (Doc. No. 44-2 at 9).  Defendant Wood reviewed Dr. Crowell's February 14, 2018 note, which suggesting renewing the three prescriptions.  (Id.)  Defendant Wood renewed the prescriptions, but decreased dosages "to limit dyspepsia and prevent further GI complications."  (Id. at 9-11).

On March 13, 2018, Defendant Bland saw Plaintiff for a sick call.  (Id. at 13).  Plaintiff sought to be placed on a muscle relaxer because his medications were not working for him.  (Id.)  Plaintiff "was informed that muscle relaxers are not medically indicated at this time."  (Id.)  Plaintiff disagreed.  (Doc. No. 44-2 at 13).

Plaintiff was examined by Defendant Wood on April 3, 2018.  (Id. at 16).  Plaintiff asked that "meds be raised back to former levels."  (Id.)  Plaintiff is noted as saying "[h]ow can y'all stop everything that the surgeon says for me to be on.  He is the head Dr."  (Id.)  Defendant Wood prescribed carbamazepine and informed Plaintiff that Plaintiff's "meds will stay as is until he is cleared by GI and Cardiology."  (Id.)  Plaintiff was not in agreement.  (Id.)

Two days later, Plaintiff was called to the infirmary where Defendant Wood performed a review of Plaintiff's records and counseled Plaintiff regarding medication.  (Doc. No. 44-2 at 18).

Plaintiff's complaints repeatedly concerned pain management.  (Id.)  Plaintiff "was asked why he was not taking his [chronic care] meds but simply pain medicines."   Defendant Wood educated Plaintiff "that his medicines were reduced based on recommendations from cardiologists, gastroenterologists, orthopedics, and the RMD."  (Id.)  Plaintiff stated "that he does not care about anything else except for the medicines for his pain," and that Defendant Wood was taking away Plaintiff's medication because Defendant Wood "knows more than the Drs."  (Id.) Plaintiff also complained that Defendant Wood had cancelled Plaintiff's surgery with Dr. Crowell. (Id.)  Defendant Wood "re-educated [Plaintiff] that he must first be cleared by Cardiology and GI prior to undergoing specific orthopedic procedures."  (Id.)

Plaintiff had a follow up appointment with Defendant Wood on April 11, 2018.  During that visit Defendant Wood noted: "[Plaintiff] continues requesting medications for pain.  He asks for Ibuprofen.  [Plaintiff was] reminded that this is not recommended with his history of PUD. [Plaintiff] is again reminded that he has multiple upcoming appts to clear him for surgery to fix his back."  (Doc. No. 44-2 at 20).

Defendant Wood saw Plaintiff during a sick call on April 25, 2018 in connection with Plaintiff's complaints of dizziness and stress test results.  (Id. at 23).  Defendant Wood gave Plaintiff a rollator walker and "educated [Plaintiff] that we are awaiting results from recent cardiac eval and reassured he is scheduled for ortho."  (Id.)

Defendant Wood reviewed cardiologist Dr. Mahmood's April 16, 2018 consultation report on May 1, 2018.  (Id. at 24).  Defendant Wood saw Plaintiff again on May 14, 2018 for follow up on test results and medication renewal.  (Id. at 25).  According to Defendant Wood's notes:

> IM with a recent abnormal stress test and EKG changes.  He is scheduled for F/U but this will not occur until after his scheduled back surgery.  He is given the results in front of Sondra Parker, DON and counseled on the risk of undergoing any

surgical procedure until cleared by cardiology.   He is informed that risks include up to and not excluding death from complications.   IM being neurologically intact states that he wishes to proceed with the scheduled back surgery and will worry about his heart afterwards if he makes it.

(Id.).

On May 18, 2018, Dr. Crowell performed surgery on Plaintiff's back.   (Doc. No. 44 at ¶ 17; Doc. No. 44-1 at 28-29).   On May 22, 2018, Defendant Bland reviewed. Dr. Crowell's related notes.   (Doc. No. 44-2 at 30).   Defendant Bland noted a follow up appointment with Dr. Crowell scheduled for June 6, 2018 at 1:00 p.m.

Defendant Bland saw Plaintiff again on May 23, 2018.   (Doc. No. 44-2 at 31).   Plaintiff was "constantly attempting to direct the encounter to his issues c incarceration and not review of lab."   (Id.)

Defendant Wood saw Plaintiff on May 31, 2018 in connection with Plaintiff's request for his prescription of tramadol, a pain killer, to be refilled and to be placed on Zanaflex versus baclofen.   (Id. at 32).   Defendant Wood prescribed tramadol, among other medications.   (Id. at 32-35).

Dr. Crowell saw Plaintiff for a post-surgery follow up on June 6, 2018 and again on July 25, 2018.   (Doc. No. 44 at ¶¶ 18, 22; Doc. No. 44-1 at 33, 45).

On June 7, 2018, Defendant Bland saw Plaintiff for an updated physical exam.   (Doc. No. 44-2 at 37).   Plaintiff had no other concerns at that time.   (Id.).   On June 7, 2018, Defendant Bland also reviewed Dr. Crowell's June 6, 2018 consultation report.   (Id. at 38).   On the following day, Defendant Bland reviewed the June 7, 2018 consultation report of Dr. Mahmood, cardiologist.   (Id. at 39).

Plaintiff was seen by Defendant Bland on June 20, 2018 for a chronic care visit.   (Id. at 41).   Plaintiff complained of severe leg pain during that visit.   (Id.).   Defendant Bland recorded

Plaintiff's height at 68 inches, his weight at 197 pounds, and noted that Plaintiff had gained weight. (Doc. No. 44-2 at 41).   Defendant Bland also explained to Plaintiff "that complete relief of pain is not possible and not a treatment goal.   Suggested Mental Health to discuss the development of coping strategies.   Suggested increased physical activity as opposed to complete sedentary activities that he currently engages in.   [Plaintiff] does not agree."   (Id.).   Defendant Bland noted to continue the medications currently prescribed, see lab orders, and schedule for chronic care in three months.   (Id.).

Defendant Wood saw Plaintiff on July 17, 2018 for Plaintiff's continued back, feet, and leg pain.   (Id. at 43).   Defendant Wood educated Plaintiff "on the need for weight loss and posture correction.   [Plaintiff] is reminded that being pain free is not the goal as this is impossible. [Plaintiff] verbalizes understanding."   (Id.).   On July 19, 2018, Defendant Wood reviewed a July 18, 2018 consultation report from Dr. Samad, gastroenterology.   (Id.).

On July 25, 2018, Defendant Bland reviewed a July 19, 2018 provider consultation report from Varner Eye Clinic.   (Doc. No. 44-2 at 46).

On July 27, 2018, Defendant Bland reviewed a July 25, 2018 provider consultation report from Dr. Crowell's clinic, as Plaintiff had been for his 4-week appointment.   (Id. at 48). Defendant Bland noted the medications currently prescribed and a consultation follow up in eight weeks.   (Id.).

On August 8, 2018, Defendant Wood saw Plaintiff for "med evaluation and renewal."   (Id. at 50).   Plaintiff "request[ed] renewal of his muscle relaxers and tramadol.   He [told Defendant Wood] that the consulting Drs tell him he can have higher doses that it would not cause gastric problems."   (Id.).   Defendant Wood informed Plaintiff "that medications and dosages will stay

as order until [Plaintiff's] EDG and cardiac cath are complete and he is given clearance from these specialties.   Understanding verbalized."   (Id.).

Defendant Bland's notes from an August 21, 2018 follow up visit Plaintiff reflect:

> [Plaintiff] presents demanding that he be started on narcotics and muscle relaxers to get rid of his chronic pain.   If y'all would pay Dr. Crowell, I could get some help.   He states that he is tired of working for free.   Y'all are going to start doing what he tells you to do.   I don't want that medication that y'all have me on because it don't work.   I am not getting enough Gabapentin.   I need more Tramadol.   That Baclofen needs to be in the trash.   Dr. Crowell did not order it.   Tegretol, I did not know I was getting that.   It don't work anyway.

(Doc. No. 44-2 at 55).   Defendant Bland prescribed numerous medications.   (Id. at 55-56).   She also informed Plaintiff that "being relieved of chronic pain is not possible."   (Id. at 56).   She explained "that the goal of treatment is to get [Plaintiff] to a point that he can attend to his ADL's." (Id.).   She told Plaintiff that his prescription for Tramadol would be allowed to expired, and that his prescriptions for Tegretol, Cymbalta, and Baclofen would be discontinued because Plaintiff said these medications do not help him.   (Id.).   Plaintiff accused Defendant Bland of trying to kill him, and said he would not leave until he got the medication that was ordered for him.   (Id.). Ultimately, security was called.   (Doc. No. 44-2 at 56).

Defendant Bland saw Plaintiff on October 23, 2018 in connection with Plaintiff's insulin changing to 70/30 insulin.   (Id. at 70).   Plaintiff refused, writing a statement that Defendant Bland was trying to kill him.   (Id.).

On November 7, 2018, Defendant Bland saw Plaintiff again after Plaintiff was released from the hospital—JRMC.   (Id. at 76).   Defendant Bland noted see medication orders, consultation request, and follow up as needed.   (Id.).   A little more than a week later, Defendant Bland saw Plaintiff during a sick call; Plaintiff complained of back and chest pain.   (Doc. No. 44-

3 at 2).   Defendant Bland explained Plaintiff's medication and treatment plan to him, and Plaintiff

voiced understanding.   (Id.).

On January 2, 2019, Defendant Bland reviewed a December 28, 2018 provider report from

Dr. Samad, Arkansas Surgery & Endoscopy Center, to confirm healing of esophageal and gastric

ulcers.   (Id. at 9).   Defendant Bland noted: "1. See medication orders; 2. See consultation request;

3. Follow-up as needed."   (Id.).   Defendant Bland, on January 9, 2019, also reviewed a provider

consultation report of that same date by Dr. Mahmood, cardiology.   (Id. at 12).   Defendant Bland

again noted: "1. See medication orders; 2. See consultation request; 3. Follow-up as needed."

(Id.).

During a sick call visit on January 30, 2019, Plaintiff asked Defendant Bland to increase

his dose of Gabapentin and to prescribe him ibuprofen, among other things.   (Doc. No. 44-3 at

14).   Defendant Bland found no indication for any of Plaintiff's requests; Plaintiff disagreed.

(Id.).   During a sick call on February 14, 2019, Plaintiff again asked Defendant Bland for

increased doses of Gabapentin, as well as strong narcotics, among other things.   (Id. at 17).

Defendant Bland again found no indication for Plaintiff's requests; Plaintiff disagreed.   (Id.).

On February 18, 2019, Defendant Bland reviewed a February 7, 2019 provider consultation

report from Varner Eye Clinic.   (Doc. No. 44-3 at 18).   She noted: "1. See medication orders;

2. See consultation request; 3. Follow-up as needed."   (Id.).

Defendant Bland reviewed Plaintiff's December 27, 2018 labs with him on February 21,

2019.   (Id. at 19).   Plaintiff's treatment plan was explained and Plaintiff voiced understanding.

(Id.).

During a March 4, 2019 sick call with a non-party provider, Defendant Bland stepped into

the room.   (Id. at 21).   Defendant Bland instructed Plaintiff he should use his walker not as a

wheelchair, but as a walker.   (Id.).   Plaintiff became irate and began to yell; the infirmary officer escorted Plaintiff out due to Plaintiff's hostility.   (Doc. No. 44-3 at 21).

Plaintiff saw Dr. Crowell again on March 18, 2019.   (Doc. No. 44 at ¶ 27; Doc. No. 44-1 at 69).   Dr. Crowell recommended follow up after reviewing the MRI of Plaintiff's lumbar spine. (Doc. No. 44-1 at 69).

Defendant Bland saw Plaintiff on March 21, 2019 for what was scheduled as a follow up consultation to orthopedics.   (Doc. No. 44-3 at 24).   Plaintiff was asked why he did not place any sick calls for the pain and numbness in his arm.   (Id.).   Plaintiff responded, in part, "I waited to tell Dr. Crowell about my arm since he messed it up.   He said that y'all don't pay him no way.   I told him that my arm was numb.   I am waiting on you to start the medication that he ordered." (Id.).   Defendant Bland found no indication for Gabapentin, Zanaflex, or Tramadol, and would allow Plaintiff's prescription for Baclofen to expire because Plaintiff said it does not work.   (Id.). She also found no indication for consultation request—surgery rt. ulnar nerve transposition or for an MRI of lumbar spine.   (Doc. No. 44-3 at 24).   She found Plaintiff's complaints about his right arm subjective with no loss of function.   (Id.).   Defendant Bland explained to Plaintiff that outside providers make recommendations, not place orders.   (Id.).   Plaintiff disagreed and was escorted away from this encounter by security.   (Id.).

On April 4, 2019, Defendant Bland saw Plaintiff for a chronic care visit: "DM Type II requiring insulin, HTN [hypertension], HLD, [and] Hypothyroidism."   (Id.at 26).   Defendant Bland noted "DM—poor control, refusing insulin as prescribed, HTN—stable, HLD—stable, Hypothyroidsim—poor control--? Medication compliance, has pending consultation to endocrinology no indication for use of Baclofen—allow to expire."   (Id.).

14

Defendant Bland renewed Plaintiff's prescription for Gabapentin on May 15, 2019.   (Doc. No. 44-3 at 28).

Plaintiff was seen by Defendant Bland for a May 15, 2019 sick call in connection with Plaintiff's back pain.   (Id. at 29).   During the visit Plaintiff did not describe his complaint, but talked about being sent back to Dr. Crowell for additional surgeries to treat his degenerative disc disease.   (Id.).   Defendant Bland explained to Plaintiff that orthopedic consultations were not medically indicated at that time.   (Id.).   She encouraged Plaintiff to take his medication as prescribed and to increase his physical activity.   (Id.).   Plaintiff disagreed.   (Id.).

During a June 7, 2019 sick call, Plaintiff again complained to Defendant Bland about Plaintiff's back pain. (Doc. No. 44-3 at 34).   Plaintiff again expressed that he needed to go back to Dr. Crowell for further surgery on Plaintiff's back.   (Id.).   When Defendant Bland explained to Plaintiff his medication and treatment plan, Plaintiff responded: "I don't want that stuff.   You are just doing that so that you can say that you did something.   I want to go and see Dr. Crowell." (Id.).

On June 24, 2018, Defendant Bland reviewed a June 20, 2019 provider consultation report from Dr. Samad, digestive care.   (Id. at 36).   She noted to see consultation requests and follow up as needed.   (Id.).

Plaintiff's next chronic care visit with Defendant Bland was on July 12, 2019.   (Id. at 43). Plaintiff complained about lower back pain.   As the encounter note reflects, Plaintiff "is attempting to steer this encounter away from its intent.   He is argumentative.   He is demanding to know if this provider will approve for him to get out to see Dr. Crowell and only Dr. Crowell. He states that Dr. Crowell wants to do more surgeries on him."   (Doc. No. 44-3 at 43).   Plaintiff disagreed with the medication and treatment plan.   (Id.).   Defendant Bland noted to schedule

Plaintiff with Dr. Smith, a provider at the Varner Unit, for Plaintiff's continued lower back pain. (Id.).

Defendant Bland saw Plaintiff again during an August 21, 2019 sick call. (Id. at 47). Plaintiff scheduled with a listed complaint of vomiting blood; he presented stating that he has not vomited blood in the last two days. (Id.). Defendant Bland explained Plaintiff's medication and treatment plan. (Id.). As recorded in the encounter notes, Plaintiff was "very argumentative and attempt[ed] to re-direct the subject of this encounter." (Doc. No. 44-3 at 47).

Defendant Bland reviewed an August 3, 2019 provider consultation report from Dr. Samad, gastroenterology. (Id. at 49). Defendant Bland noted: see medication orders, see consultation request, and follow up as needed. (Id.). Defendant Bland also prescribed Plaintiff the medication recommended by Dr. Samad. (Id.).

During a November 7, 2019 sick call, Plaintiff presented with right arm pain. (Id. at 60). Defendant Bland noted subjective elbow pain and prescribed Plaintiff prednisone. (Id.).

Beyond the medical care Plaintiff received from Defendants Bland and Wood, Plaintiff was seen and treated by multiple outside providers during the period relevant to Plaintiff's Amended Complaint. Plaintiff received medical care from Dr. Crowell, Dr. Mahmood, Dr. Samad, and Dr. Menon, an outside endocrinologist.

### 1.    Plaintiff's Response

In his Response to Defendants' Statement of Facts, Plaintiff concedes that many facts Defendants asserted "are possibly correct," "may have happened," or are "unknown by [Plaintiff]." (Doc. No. 51 at ¶¶ 1, 5, 6). Plaintiff disputes other facts based only on the fact that Defendant Bland, Defendant Woods, and others Plaintiff refers to as defendants' experts provided treatment or an opinion, rather than Plaintiff's "attending physician." (Id. at ¶¶ 4, 8-10, 12).

16

Plaintiff does not contest that he had back surgery in 2016 or 2017, but maintains he fell off a building while in prison and hurt his back. (Doc. No. 44 at ¶¶ 5-6; Doc. No. 51 at ¶ 2). Plaintiff agrees that he was evaluated by Dr. Crowell on November 8, 2017, and he agrees that his claims in this case begin on or about November 8, 2017. (Doc. No. 44 at ¶¶ 10-11; Doc. No. 51 at ¶ 1).

Plaintiff did not realize that he had been admitted to the hospital when he was found to have gastrointestinal bleeding and a large peptic ulcer; Plaintiff "thought [he] was only tested for bleeding and ulcer." (Doc. No. 44 at ¶ 9; Doc. No. 51 at ¶ 3).

Defendants point out that on July 11, 2019, Plaintiff was examined by Dr. Menon, an outside endocrinologist. (Doc. No. 44 at ¶ 29). Plaintiff controverted this fact, saying: "I have not seen anything about a Dr. Menon examining Plaintiff." (Doc. No. 51 at ¶ 29). Plaintiff's medical records, however, reflect that he was seen by Dr. Menon. (Doc. No. 44-1 at 71; Doc. No. 44-3 at 39).

Lastly, Plaintiff says that Defendant Bland changed his insulin "from what Plaintiff's physician prescribed." (Doc. No. 44 at ¶¶ 37, 39; Doc. No. 51 at ¶ 11). Plaintiff maintains "[t]he adjustments are how much Plaintiff needs at that time, not the type of insulin." (Doc. No. 51 at ¶ 11). Plaintiff simultaneously argues the contrary—that Defendant Bland put Plaintiff on insulin to which he is allergic. (Id. at 4). Plaintiff believes Defendant Bland is trying to kill him. (Id. at 4, 5, 9).

In support of his opposition, Plaintiff also submitted an affidavit signed by Jerry McKee, who explains he "is . . . doing the talking for Plaintiff." (Doc. No. 52). The affidavit reflects that Plaintiff has seen Defendant Bland three times for jock itch, but still suffers from the condition. (Id.).

2.      **No Remaining Material Facts in Dispute**

With very limited exception, Plaintiff did not contest the medical records provided by Defendants in support of their Motion. As evidenced by the medical records cited extensively above, Defendants Bland and Wood provided care to Plaintiff on numerous occasions. Plaintiff takes issue that Defendants did not follow outside provider recommendations. But prison doctors may exercise their independent medical judgment, and are not mandated to accept the diagnoses or treatment plan of an outside provider. _Dulany v. Carnahan_, 132 F.3d 1234, 1239 (8th Cir. 1997). The record reflects Defendants provided care for Plaintiff's pain and underlying conditions, including scheduling Plaintiff with other doctors and with outside providers. The record does not reflect that Defendant Bland or Defendant Wood was deliberately indifferent to any of Plaintiff's serious medical needs. Plaintiff asserts he is allergic to the insulin Defendant Bland provided him, but Plaintiff provided no evidence of any allergy. Plaintiff may have preferred another course of treatment. But as the Court of Appeals for the Eighth Circuit has explained, "mere disagreement with treatment decisions . . . does not rise to the level of a constitutional violation." Cejvanovic v. Ludwick, 923 F.3d 503, 507-08 (8th Cir. 2019).

As set out above, Plaintiff does dispute several facts in Defendants' Statement of Facts. (Doc. No. 51). For example, Plaintiff disputes the care he received was "not the appropriate standard of medical care" based on the fact that the care was provided by Defendants Bland and Wood. (Id. at ¶ 8, for example). But the fact that Defendants were providers at the Varner Unit and not outside providers is not enough; Plaintiff must establish a factual dispute that Defendants were deliberately indifferent to his serious medical needs. This Plaintiff has not done: none of the disputes Plaintiff identifies establish deliberate indifference. The Court finds the disputes Plaintiff claims do not prevent entry of summary judgment in Defendants' favor. Sitzes v. City

of West Memphis, Ark., 606 F.3d 461, 465 (8th Cir. 2010) (disputes that are not genuine or that are about facts that are not material will not preclude summary judgment).

Where, as here, Defendants have moved for summary judgment, Plaintiff "was required 'to discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'"    Fatemi v. White, 775 F.3d 1022, 1046 (8th Cir. 2015) (internal citation omitted).    Plaintiff has not, however, met proof with proof to establish facts in dispute that would preclude partial summary judgment in Defendants' favor.    Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor). Accordingly, Defendants' Motion should be granted.

## V.    Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1.    Defendants' Motion for Summary Judgment (Doc. No. 43) be GRANTED;

2.    Plaintiff's Motion to Appoint Counsel (Doc. No. 49) be DENIED as moot;

3.    Plaintiff's Motion for Appointment of Expert (Doc. No. 50) be DENIED as moot;

4.    Plaintiff's Complaint, as amended (Doc. No. 5), be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 27th day of October, 2021.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE